J-S57038-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| LATIF MUHAMMAD, | : | |
| | : | |
| Appellant | : | No. 3165 EDA 2016 |

Appeal from the Judgment of Sentence September 9, 2016
in the Court of Common Pleas of Philadelphia County,
Criminal Division, No(s):  CP-51-CR-0006761-2014

BEFORE:  PANELLA, SOLANO and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:              **FILED OCTOBER 18, 2017**

Latif Muhammad ("Muhammad") appeals from the judgment of sentence imposed following his guilty plea to robbery, terroristic threats, and possession of an instrument of crime.  **See** 18 Pa.C.S.A. §§ 3701(a)(1)(ii); 2706(a)(1); 907(a).  We affirm.

The trial court set forth the facts underlying the guilty plea as follows:

Ravi Ghattamaneni [("Ghattamaneni")] … would testify that on March 29[,] 2014, he went to the Parx Casino in Bensalem, Pennsylvania[,] where he remained … until approximately 3:30 in the morning.  During that tenure at the Parx Casino from March 29[], 2014 into March 30[], 2014[,] he came in contact with [Muhammad].  [Muhammad] was playing at the same poker table as him for a number of hours and they struck up a conversation.

At one point the victim, [] Ghattamaneni, allowed or gave [Muhammad] $50 to borrow to gamble.  Eventually[,] [] Ghattamaneni left the casino with a total winnings of $3,100, which he had in an envelope.

There would also be video evidence from the Parx Casino [][,] which would show [] Ghattamaneni and [Muhammad] at the

same poker table[,] as well as records by use of player cards at the Parx Casino. There would be video that would depict [Ghattamaneni] leaving the poker table and then walking outside to the taxi stand, and then[,] two minutes later[,] [Muhammad] getting up from that same poker table and then also going outside, coming in contact with [Ghattamaneni;] and then the two … walk[ed] towards the parking lot. [Muhammad and []
Ghattamaneni got into the same car, with Muhammad driving.]
…

[] Ghattamaneni would also testify that on the way to the airport he attempted to exit the vehicle and asked to stop at McDonald's and Dunkin Donuts[,] of which there is surveillance video which shows [Muhammad's] vehicle at the drive through in McDonald's.
…

There was a receipt ultimately recovered from that vehicle during the execution of a valid search warrant[,] where that McDonald's receipt from the early hours of March 30[], 2014 was recovered.

[Ghattamaneni then] asked [Muhammad] to stop at Dunkin Donuts[,] where he [] successfully [got] out of the car. [T]here is video surveillance [] of both [Muhammad] and [Ghattamaneni] having a discussion inside the [Dunkin Donuts] before [Ghattamaneni] return[ed] with [Muhammad] to … the vehicle of [Muhammad]. [Ghattamaneni] would then testify that when he was on I[-]95[,] and he pulled out his phone after [Muhammad] asked to see it, [Muhammad] pulled over the car, pulled out a folding knife … and placed it against [Ghattamaneni's] neck…. [Muhammad] took [Ghattamaneni's] phone and then demanded the money that was in the envelope. [Ghattamaneni] handed over the money, [and] put his hands up, at which time he was pushed out of the car on the side of I[-]95. He went up the ramp on I[-]95 South to Front and Market Street in the City and County of Philadelphia, at which time he had a bar patron from the Drinker's Tavern call 911 and Philadelphia police responded. Th[e] Philadelphia police officer who responded said [that] once he learned that the robbery took place on I[-]95[,] he contacted Pennsylvania State Police who were assigned the case.

Pennsylvania State troopers would testify that they recovered all the video from the Parx Casino, the McDonald's and the Dunkin

Donuts. Additionally[,] they executed a search warrant of [Muhammad's] home and vehicle on April 16[], 2014. Recovered from that search warrant was the hat that [Muhammad] was seen wearing in the Parx Casino surveillance video, the black and white striped shirt that was seen in the Parx Casino surveillance video, as well as a jacket which they believed to be the same jacket worn by [Muhammad] at the Parx Casino.

Similarly[,] when they executed the search warrant, they did find a folding box cutter in the pocket of the front driver's side door of that vehicle, which was [] the same description that was provided by [Ghattamaneni], in addition to the receipts from McDonald's which w[ere] recovered in the glove compartment. …

[Ghattamaneni] would also testify that throughout the trip[,] [Muhammad] shared with him and attempted to intimidate with his understanding that he was a boxer, and he was a professional boxer numerous times and how he could [] overpower anyone, [which] intimidated [Ghattamaneni].

Trial Court Opinion, 12/5/16, at 2-4 (citation omitted).

Muhammad was arrested and charged with various offenses. On June 7, 2016, Muhammad entered an open guilty plea to the above-mentioned crimes. The trial court deferred sentencing until September 9, 2016. On September 8, 2016, Muhammad filed a counseled Motion to Withdraw Guilty

Plea.[1]  The trial court denied the Motion.  On September 9, 2016, the trial court sentenced Muhammad to an aggregate term of five to ten years in prison.  On September 27, 2016, Muhammad, *pro se*, filed a Motion for Reconsideration of Sentence.[2]  Muhammad, *pro se*, filed a timely Notice of Appeal on October 5, 2016.  Thereafter, the trial court appointed Muhammad new counsel.  On October 25, 2016, the trial court ordered Muhammad to file a Pa.R.A.P. 1925(b) concise statement prior to November 15, 2016. Muhammad filed a Concise Statement on November 22, 2016.

On appeal, Muhammad raises the following question for our review: "Did the [trial] court commit an abuse of discretion by denying [Muhammad's] Motion to Withdraw his guilty plea prior to sentencing[,] when [Muhammad] established a colorable claim of innocence?"  Brief for Appellant at 3 (capitalization omitted).

---

[1] On July 19, 2016, Muhammad filed a *pro se* Motion to Withdraw Guilty Plea, despite the fact that he was still represented by counsel.  Generally, *pro se* filings by a defendant, who at the time of filing is represented by counsel, are considered legal nullities.  **See Commonwealth v. Ali**, 10 A.3d 282, 293 (Pa. 2010); **see also Commonwealth v. Mason**, 130 A.3d 601, 671 (Pa. 2015) (noting that "our jurisprudence has consistently prohibited at both trial and appellate levels when strategic disagreements arise between defendant and counsel is the option of hybrid representation, where an otherwise represented defendant acts as *de facto* co-counsel exercising control over parts of the defense.").  Under Pennsylvania Rule of Criminal Procedure 576(A)(4), prothonotaries are required to accept and enter in the docket all *pro se* filings, and forward the filings to defendant's counsel. Pa.R.Crim.P. 576(A)(4).  Here, Muhammad's *pro se* Motion to Withdraw Guilty Plea was entered in the docket and forwarded to his counsel.

[2] The trial court denied the Motion as untimely filed on October 24, 2016, after the filing of the Notice of Appeal.

Prior to addressing Muhammad's claim, we must determine whether he properly preserved it for our review. It is well-settled that when a trial court orders an appellant to file a Rule 1925(b) concise statement, he must comply to preserve his claims on appeal. *See Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa. 1998). Where "an appellant in a criminal case was ordered to file a [s]tatement and fails to do so, such that the appellate court is convinced that counsel has been *per se* ineffective, the appellate court shall remand for the filing of a [s]tatement *nunc pro tunc* and for the preparation and filing of an opinion by the judge." Pa.R.A.P. 1925(c)(3). However, "[w]hen counsel has filed an untimely Rule 1925(b) statement and the trial court has addressed those issues[,] we need not remand and may address the merits of the issues presented." *Commonwealth v. Thompson*, 39 A.3d 335, 340 (Pa. Super. 2012).

Here, the trial court ordered Muhammad to file a Rule 1925(b) concise statement prior to November 15, 2016. Muhammad's counsel was *per se* ineffective for filing the Concise Statement on November 22, 2016. However, because the trial court addressed the claim raised in Muhammad's Concise Statement in its Opinion, we will address the merits of Muhammad's claim. *See id.*

Muhammad contends that the trial court abused its discretion in denying his Motion to Withdraw Guilty Plea. Brief for Appellant at 6. Muhammad points out that because he moved to withdraw his guilty plea

- 5 -

prior to sentencing and asserted his innocence, he provided a "fair and just" ground for withdrawal of the plea. *Id.* at 7-8. Muhammad argues that he only pled guilty to see his ailing wife, and that he did not commit any crimes against Ghattamaneni. *Id.* at 7; *see also id.* at 8 (claiming that he had an emotional experience visiting his ill wife and immediately regretted the entry of the plea).

"Our law is clear that to be valid, a guilty plea must be knowingly, voluntarily and intelligently entered." *Commonwealth v. Bedell*, 954 A.2d 1209, 1212 (Pa. Super. 2008). This Court has established six topics that must be covered by a valid plea colloquy: "1) the nature of the charges, 2) the factual basis for the plea, 3) the right to a jury trial, 4) the presumption of innocence, 5) the sentencing ranges, and 6) the plea court's power to deviate from any recommended sentence." *Commonwealth v. Morrison*, 878 A.2d 102, 107 (Pa. Super. 2005); *see also* Pa.R.Crim.P. 590, cmt.

"At any time before the imposition of sentence, the court may, in its discretion, permit, upon motion of the defendant, or direct, *sua sponte*, the withdrawal of a plea of guilty or *nolo contendere* and the substitution of a plea of not guilty." Pa.R.Crim.P. 591(A); *see also Commonwealth v. Gordy*, 73 A.3d 620, 624 (Pa. Super. 2013) (stating that "the decision to grant or deny a motion to withdraw a guilty plea rests within the trial court's discretion, and we will not disturb the court's decision on such motion unless the court abused that discretion.") (citation omitted). Additionally, while

there is no absolute right to withdraw a guilty plea, "[a] pre-sentence motion to withdraw a guilty plea should be liberally allowed and should be granted for any fair and just reason unless granting the motion would cause substantial prejudice to the Commonwealth." *Gordy*, 73 A.3d at 623-24; *see also Commonwealth v. Carrasquillo*, 115 A.3d 1284, 1292 (Pa. 2015).

> More broadly, the proper inquiry on consideration of such a withdrawal motion is whether the accused has made some colorable demonstration, under the circumstances, such that permitting withdrawal of the plea would promote fairness and justice. The policy of liberality remains extant but has its limits, consistent with the affordance of a degree of discretion to the common pleas courts.

*Carrasquillo*, 115 A.3d at 1292.

Here, the trial court addressed Muhammad's claim and determined that it is without merit. *See* Trial Court Opinion, 12/5/16, at 5-7; *see also Commonwealth v. Johnson-Daniels*, 2017 PA Super 209, **6-7 (Pa. Super. 2017) (concluding that the trial court did not abuse its discretion in denying the defendant's pre-sentence motion to withdraw guilty plea where defendant filed the motion on the day of sentencing and his assertion of innocence was implausible). We agree with the sound reasoning of the trial court, affirm on this basis for the purpose of this appeal, and conclude that the trial court did not abuse its discretion in denying Muhammad's Motion to Withdraw Guilty Plea. *See* Trial Court Opinion, 12/5/16, at 5-7.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/18/17



**IN THE COURT OF COMMON PLEAS**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**CRIMINAL TRIAL DIVISION**

FILED

DEC 0 5 2016

Criminal Appeals Unit
First Judicial District of PA

COMMONWEALTH OF PENNSYLVANIA : CP-51-CR-0006761-2014

v.

LATIF MUHAMMAD

CP-51-CR-0006761-2014 Comm. v. Muhammad, Latif
Opinion

7872413041

**OPINION**

**McDermott, J.**                    **December 5, 2016**

## Procedural History

On April 23, 2014, the Defendant, Latif Muhammad, was arrested for Robbery and related offenses. On June 7, 2016, the Defendant appeared before this Court and entered a non-negotiated guilty plea. Sentencing was deferred until September 9, 2016, for completion of a presentence report.

On July 19, 2016, the Defendant filed a *pro se* Motion to Withdraw Guilty Plea. On July 21, 2016, this Court forwarded a copy of said motion to defense counsel. On September 8, 2016, the day before sentencing, defense counsel filed a Motion to Withdraw Guilty Plea. On September 9, 2016, after a hearing on the matter, this Court denied the Defendant's Motion to Withdraw Guilty Plea. On the same date, this Court sentenced the Defendant to five to ten years for Robbery, and concurrent sentences of one to two years for Possession of an Instrument of Crime ("PIC") and Terroristic Threats.

On September 27, 2016, the Defendant filed an untimely[1] *pro se* Motion for Reconsideration of Sentence, which was not properly served on this Court. On October 5, 2016, the Defendant filed a *pro se* Notice of Appeal to the Superior Court. Although the Defendant's Motion for Reconsideration of Sentence was untimely filed and not properly served, this Court, in an abundance of caution, denied said motion on October 24, 2016. On October 25, 2016, this Court appointed appellate counsel and ordered the Defendant to submit a Statement of Matters Complained of on Appeal pursuant Pa.R.A.P. § 1925(b) on or before November 15, 2016. On November 22, 2016, the Defendant, through counsel, filed an untimely Rule 1925(b) Statement of Matters Complained of on Appeal.[2]

**Facts**

On June 7, 2016, the Defendant plead guilty to the following facts:

> Ravi Ghattamaneni . . . would testify that on March 29[ ] of 2014, he went to the Parx Casino in Bensalem, Pennsylvania where he remained . . . until approximately 3:30 in the morning. During that tenure at the Parx Casino from March 29[ ], 2014 into March 30[ ], 2014 he came in contact with the [D]efendant. The [D]efendant was playing at the same poker table as him for a number of hours and they struck up a conversation.
>
> At one point the victim, Mr. Ghattamaneni, allowed or gave the [D]efendant $50 to borrow to gamble. Eventually Mr. Ghattamaneni left the casino with a total winnings of $3,100, which he had in an envelope.
>
> There would also be video evidence from the Parx Casino Resort which would show Mr. Ghattamaneni and the [D]efendant at the same poker table as well as records by use of player cards at the Parx Casino. There would be video that would depict the victim leaving the poker table and then walking outside to the taxi stand, and then two minutes later the [D]efendant getting up from that same poker

---

[1] "[A] written post-sentence motion shall be filed no later than 10 days after imposition of sentence. Pa.R.Crim.P. Rule 720(1).

[2] This Court's chambers contacted appellate counsel on November 22, 2016, to inquire about the status of his Rule 1925(b) Statement. Counsel stated that he was awaiting notes of testimony. The notes, however, relevant to this matter, were posted on November 9, and November 18, 2016. Further, this Court discovered that counsel never requested the notes of testimony. Because appellate counsel failed to file a timely Rule 1925(b) Statement, this Court, on November 28, 2016, instructed appellate counsel that he had until December 2, 2016, to file a Rule 1925(b) Statement *nunc pro tunc*. Defense counsel failed to file by December 2, 2016.

table and then also going outside, coming in contact with the victim[;] and then the two . . . walk[ed] towards the parking lot. [The Defendant and Mr. Ghattamaneni got into the same car, with the Defendant driving.]

. . .

Mr. Ghattamaneni would also testify that on the way to the airport he attempted to exit the vehicle and asked to stop at McDonald's and Dunkin Donuts of which there is surveillance video which shows the [D]efendant's vehicle at the drive through in McDonald's.

. . .

There was a receipt ultimately recovered from that vehicle during the execution of a valid search warrant where that McDonald's receipt from the early hours of March 30[ ], 2014 was recovered.

[Mr. Ghattamaneni then] asked [the Defendant] to stop at Dunkin Donuts where he actually successfully [got] out of the car. [T]here is video surveillance video of both the [D]efendant and the victim having a discussion inside the [Dunkin Donuts] before the victim [ ] return[ed] with the [D]efendant to . . . the vehicle of the [D]efendant. The victim would then testify that when he was on I 95 and he pulled out his phone after the [D]efendant asked to see it, the [D]efendant pulled over the car, pulled out a folding knife . . . and placed it against [Mr. Ghattamaneni]'s neck. . . . The [D]efendant took the victim's phone and then demanded the money that was in the envelope. The victim handed over the money, put his hands up, at which time he was pushed out of the car on the side of I 95. He went up the ramp on I 95 South to Front and Market Street in the City and County of Philadelphia, at which time he had a bar patron from the Drinker's Tavern call 911 and Philadelphia police responded. That Philadelphia police officer who responded said once he learned that the robbery took place on I 95 he contacted Pennsylvania State Police who were assigned the case.

Pennsylvania State troopers would testify that they recovered all the video from the Parx Casino, the McDonald's and the Dunkin Donuts. Additionally they executed a search warrant of the [D]efendant's home and vehicle on April 16[ ], 2014. Recovered from that search warrant was the hat that the [D]efendant was seen wearing in the Parx Casino surveillance video, the black and white striped shirt that was seen in the Parx Casino surveillance video, as well as a jacket which they believed to be the same jacket worn by the [D]efendant at the Parx Casino.

Similarly[,] when they executed the search warrant, they did find a folding box cutter in the pocket of the front driver's side door of that vehicle, which was in the same description that was provided

3

by the victim, in addition to the receipts from McDonald's which was recovered in the glove compartment.

. . .

The victim would also testify that throughout the trip the [D]efendant shared with him and attempted to intimidate with his understanding that he was a boxer, and he was a professional boxer numerous times and how he could [ ] overpower anyone, [which] intimidated [ ] the victim.

N.T., 6/07/2016 at 29–34.

## Discussion

Before addressing the merits of the Defendant's claim, this Court must address the untimeliness of the Defendant's Rule 1925(b) statement. Generally, an untimely filed Rule 1925(b) statement requires remand by the Superior Court for the filing of a statement *nunc pro tunc*; however, "where the trial court addresses the issues raised in an untimely Rule 1925(b) statement, [the Superior Court] need not remand but may address the issues on their merits." *Commonwealth v. Brown*, 145 A.3d 184, 186 (Pa. Super. 2016); *see also Commonwealth v. Burton*, 973 A.2d 428, 433 (Pa. Super. 2009) ("[I]f there is an untimely filing, this Court may decide the appeal on the merits if the trial court had adequate opportunity to prepare an opinion addressing the issues being raise on appeal"). Although the Defendant herein failed to file his Rule 1925(b) statement within the prescribed period, this Court has adequate information from the record to address his sole issue.

The Defendant claims that this Court abused its discretion in denying his motion to withdraw his guilty plea after the Defendant claims he made a colorable claim of innocence.

Recently, in *Commonwealth v. Carrasquillo,* the Pennsylvania Supreme Court stated,

there is no absolute right to withdraw a guilty plea; trial courts have discretion in determining whether a withdrawal request will be granted; such discretion is to be administered liberally in favor of the accused; and any demonstration by a defendant of a fair-and-just

4

reason will suffice to support a grant, unless withdrawal would work substantial prejudice to the Commonwealth.

115 A.3d 1284, 1291–1292 (Pa. 2015) (footnote omitted). The *Carrasquillo* court specifically noted that,

> Presently, we are persuaded by the approach of other jurisdictions which require that a **defendant's innocence claim must be at least plausible to demonstrate**, in and of itself, a fair and just reason for presentence withdrawal of a plea. More broadly, the proper inquiry on consideration of such a withdrawal motion is whether the accused has made some **colorable demonstration**, under the circumstances, such that permitting withdrawal of the plea would promote fairness and justice. The policy of liberality remains extant but has its limits, consistent with the affordance of a degree of discretion to the common pleas court.

*Commonwealth v. Carrasquillo*, 115 A.3d 1284, 1292 (Pa. 2015) (emphasis added).

In the case at bar, the Defendant failed to provide a plausible and colorable demonstration of his innocence to permit withdrawal of his guilty plea. In his first motion to withdraw, filed *pro se* on July 19, 2016, six weeks after his plea, the Defendant's never asserted his innocence. Rather, he alleged unsubstantiated claims of duress in that he entered his plea under pressure from his family, his attorney, and officers of the court. He also stated that he did not understand he had a right to face his accuser (Ravi Ghattamaneni); and that he made a hasty decision not knowing whether his accuser was available to testify.

The record contradicts each of the Defendant's assertions. First, the record reflects that the Defendant entered a knowing, intelligent, and voluntary plea. "[W]here the record clearly demonstrates that a guilty plea colloquy was conducted, during which it became evident that the defendant understood the nature of the charges against him, the voluntariness of the plea is established." *Commonwealth v. Rush*, 909 A.2d 805, 808 (Pa. Super. 2006) (*quoting Commonwealth v. McCauley*, 797 A.2d 920, 922 (Pa. Super. 2001)). Once a defendant has

5

entered a guilty plea, it is presumed he was aware of what he was doing and the burden of proving involuntariness is upon him. *Commonwealth v. Willis*, 68 A.3d 997, 1002 (Pa. Super. 2013) (citation omitted). During a plea colloquy, a "defendant is bound by [his] statements . . . and a defendant may not later offer reasons for withdrawing the plea that contradict statements made when he pled." *Commonwealth v. Brown*, 48 A.3d 1275, 1277 (Pa. Super. 2012).

Here, the Defendant completed a written guilty plea colloquy in which he acknowledged that there was a factual basis for his plea, that he had a right to a jury trial, that he was presumed innocent until proven guilty, that he was aware of the permissible sentencing range and fines for the offenses in which he was charged, and that the plea was voluntary.

To ensure that the Petitioner was fully aware of his rights, and to afford him the opportunity to ask questions before making his final decision, this Court supplemented the written colloquy with an oral one. This Court also made certain that the Petitioner understood all the rights he was waiving, and confirmed that he was entering his plea voluntarily. N.T., 6/07/16 at 22–27, 36–37.

Next, the Defendant was well aware that his accuser (Ravi Ghattamaneni) would testify at trial. On numerous occasions at his plea hearing, there were references to the fact that Ghattamaneni flew in from Atlanta, GA and was available to testify against the Defendant at trial. N.T., 6/07/16 at 22, 37–38. For these reasons, these claims are devoid of merit.

In his second motion, filed by counsel on September 8, 2016, the day before sentencing, the Defendant offered—for the first time—that he did not rob the victim, but that the victim lost his money to a third-party whom the Defendant had taken him to see. This claim, however, that someone else robbed the victim, is nothing more than an unsupported, bare assertion of innocence and not a plausible or colorable demonstration. *See Carrasquillo, supra.; see also*

6

*Commonwealth v. Hviada,* 116 A.3d 1103 (Pa. 2015) (affirming that the defendant's unsupported pre-sentence assertion of innocence, in which he claimed, "I'm here to maintain my innocence in the charge of murder in the first degree," was no more than an attempt to manipulate the system). In addition to this bare assertion, this Court considered the timing of the Defendant's innocence claim. In the three-month period following his plea, the Defendant never asserted his innocence. Like in *Carrasquillo*—which found no colorable demonstration—the Defendant in the instant matter failed to assert his innocence until right before sentencing. *See Carrasquillo, supra.*[3]

Further, when given a chance to address his withdrawal motion at a hearing, the Defendant failed to elaborate on his innocence claim and never mentioned the alleged third-party or that person's involvement in taking the victim's money. Instead, the Defendant offered a rambling discourse with references to a plea agreement years earlier with the State of Nevada from which he alleged he served more time than agreed upon. He also spoke of his wife and her health, and that he pled guilty in the instant matter "simply because [he] wanted to get home to [his] wife and because the pressure and the coercion from [his] wife and the courts." N.T., 9/09/2016 at 9–12. Because the Defendant has failed to establish a sufficient argument as to his innocence, he does not meet his burden under *Carrasquillo.*

Accordingly, the Defendant's judgment of sentence should be affirmed.

BY THE COURT,

Barbara A. McDermott, J

---

[3] In *Carrasquillo*, the defendant asserted his innocence the day of sentencing. Here, the Defendant asserted his innocence the day before sentencing. *See Commonwealth v. Carrasquillo*, 115 A.3d 1284 (Pa. 2015).

7